UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------- X
THOMAS DEWITT,

        Plaintiffs,             **MEMORANDUM AND ORDER**

   -against-                   10-CV-3319 (KAM)

HOME DEPOT U.S.A., Inc.,

        Defendant.
---------------------------- X

**MATSUMOTO, United States District Judge:**

       On May 28, 2010, plaintiff Thomas Dewitt ("plaintiff")
commenced this action in New York State Supreme Court in Kings
County asserting, *inter alia*, negligence claims against defendant
Home Depot U.S.A., Inc. ("Home Depot" or "defendant") in
connection with allegations that plaintiff suffered personal
injuries when Home Depot employees forcefully detained him after
falsely accusing him of shoplifting. (*See* ECF No. 1, Verified
Complaint ("Compl.").)   Home Depot subsequently removed the
action to this court on July 20, 2010.  Plaintiff initially
brought this action against "John Doe 1," "John Doe 2," "John Doe
3," and "John Doe 4," which are "fictitious names, intended to be
the assailants of the plaintiff." (*Id.* at 1.)  During discovery,
plaintiff identified these John Doe defendants as Woody Simeon,
Mariano Moreno, and Arturo Barbosa. (*See* ECF No. 29, Plaintiff's
Memorandum of Law in Opposition to Defendant's Motion for Summary

Judgment at 2 n.3.).) Plaintiff, however, never moved to amend his complaint to add these individual defendants and never served the complaint on these individual defendants. Accordingly, plaintiff's claims against the John Doe defendants are dismissed. *See* Fed. R. Civ. P. 4(m) (mandating dismissal without prejudice of claims against a defendant that is not served within 120 days after the complaint is filed); *Brown v. Tomcat Elec. Sec., Inc.*, No. 03-CV-5175, 2007 U.S. Dist. LEXIS 63542, at *2 n.2 (E.D.N.Y. Aug. 27, 2007) ("Since, even after discovery, plaintiffs have failed to substitute named defendants for the John Does and XYZ Corporations, the claims against those defendants are dismissed."). Plaintiff also voluntarily discontinued with prejudice his second cause of action for punitive damages (*see* ECF No. 13, Stipulation of Discontinuance of the Second Cause of Action for Punitive Damages) and all intentional tort claims alleged in his first and third causes of action (*see* ECF No. 25, Stipulation and Order of Discontinuance of Intentional Tort Claims). Therefore, the only remaining claims in this action are plaintiff's negligence claims against Home Depot.

Presently before the court is Home Depot's motion for summary judgment pursuant to Federal Rule of Civil Procedure 56 on plaintiff's negligence claims. Having reviewed the parties' submissions, the record before the court, and the relevant case

law, for the reasons set forth below, the court grants Home Depot's motion for summary judgment in its entirety.

**BACKGROUND**

## I.   Statement of Relevant Material Facts[1]

For the purposes of deciding this motion for summary judgment, the court has considered whether the parties have proffered admissible evidence in support of their positions and has construed the evidence in the light most favorable to the nonmoving plaintiff, drawing all reasonable inferences in his favor. *See FDIC v. Great Am. Ins. Co.*, 607 F.3d 288, 292 (2d Cir. 2010); *Presbyterian Church of Sudan v. Talisman Energy, Inc.*, 582 F.3d 244, 264-65 (2d Cir. 2009). Additionally, the court has considered materials in the record that have not been cited by the parties. *See* Fed. R. Civ. P. 56(c)(3). Because the parties present significantly divergent factual accounts, the court will first summarize plaintiff's account of the relevant facts, construing the evidence in the light most favorable to

---

[1]   The following facts are taken from the parties' statements pursuant to Local Civil Rule 56.1 and the accompanying exhibits. (*See* ECF No. 32-1, Affirmation in Support of Summary Judgment ("Def. 56.1 Stmt."); ECF No. 29-6, Plaintiff's Local Rule 56.1 Statements of Material Facts ("Pl. 56.1 Stmt.").) Additionally, because both parties rely on evidence cited in their briefs that was not contained in their Local Rule 56.1 statements, the court incorporates such evidence into their Local Rule 56.1 statements to the extent the evidence may be material. (*See* ECF No. 32-8, Defendant's Memorandum of Law in Support of the Summary Judgment Motion ("Def. Mem."); ECF No. 29, Plaintiff's Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment ("Pl. Opp'n"); ECF No. 32-6, Defendant's Affirmation in Further Support of Its Summary Judgment Motion ("Def. Reply").)

him, and then will describe the issues of fact disputed by Home
Depot.

### A.   Plaintiff's Account of the April 13, 2009 Incident

On April 13, 2009, Woody Simeon ("Simeon"), Mariano
Moreno ("Moreno"), and Arturo Barbosa ("Barbosa") were Home Depot
employees working at the store located at 2970 Cropsey Avenue in
Brooklyn, New York (the "Store") in the capacity of Asset
Protection Specialists (collectively, the "AP Specialists").
(Def. 56.1 Stmt. at 2; Pl. 56.1 Stmt. at 1; ECF No. 29-2,
Transcript of Deposition of Woody Simeon ("Simeon Dep.") at 27-
28.)  Around noon on the same day, plaintiff entered the Store to
purchase a drill.  (ECF No. 29-1, Transcript of Deposition of
Thomas Dewitt ("Pl. Dep.") at 26, 31.)  He obtained a shopping
cart and eventually proceeded to an area known as the tool corral
to look for a drill.  (*Id.* at 29, 34-36.)  After he picked up one
Ridgid brand drill box and placed it in his shopping cart,
plaintiff eventually proceeded to a cash register for checkout.
(*Id.* at 37-39.)  Prior to proceeding to the cash register,
plaintiff did not tamper with the Ridgid drill box in any manner
and did not place a second drill in the drill box only intending
to pay for one drill.  (*Id.* at 42-44.)

At the cash register, plaintiff paid for a single drill
using his Visa credit card and obtained a receipt.  (*Id.* at 40.)
Seconds later, plaintiff was approached by the AP Specialists,

who were wearing plain clothes. (*Id.* at 46-47; Simeon Dep. Tr. at 16, 27; Pl. 56.1 Stmt. at 1.) Without identifying themselves as Home Depot employees, one of the AP Specialists grabbed plaintiff from behind by the neck and placed him in a head lock and another AP Specialist twisted plaintiff's arm behind his back. (Pl. Dep. at 48-50.) Then, without explaining their actions to plaintiff and with no resistance from plaintiff, the AP Specialists pulled plaintiff with his arm behind his back to an office in the back of the Store. (*Id.* at 48, 63-65, 67-70.)

In the office, plaintiff was patted down by the AP Specialists, who removed the contents of his pockets, and he sat down in a chair. (*Id.* at 70-71.) After plaintiff was in the office for approximately twenty minutes, police officers arrived at the Store in response to a 911 call by Home Depot and waited outside the office, as plaintiff could hear their radios from the office. (*Id.* at 79-82, 84-85, 95-96; Exhibit E to Def. 56.1. Stmt., Transcript of Deposition of Aida Acevado ("Acevado Dep.") at 11, 49.) Plaintiff was told by the AP Specialists that he could go home if he signed a document (the "Voluntary

Statement").[2]  (Pl. Dep. at 76.)  Plaintiff, however, informed

the AP Specialists that he could not read the Voluntary Statement

because he did not have his reading glasses, and when plaintiff

attempted to get out of his chair to speak to a police officer,

one of the AP Specialists pushed him back down into the chair.

(*Id.* at 78-80, 84-85.)

　　　While still in the office, plaintiff eventually signed

the Voluntary Statement even though he could not read it because

he felt that he would not be able to leave without signing it.

(*Id.* at 86, 105-06, 108, 164-66.)  Although plaintiff testified

that there was no way out of the office because one of the AP

Specialists blocked the doorway (i*d.* at 87-93), the door to the

office was left open and plaintiff never asked to leave the

office, to make a phone call, or to call the police (*id.* at 74,

76, 88, 99-100; Simeon Dep. at 99-100).

　　　The police officers that arrived at the Store learned

from Moreno and another AP Specialist that the AP Specialists

detained plaintiff after they observed him (1) open a drill box

containing one drill, (2) remove packaging from the box, (3)

---

[2]  The Voluntary Statement contained the following language:  "I, *Thomas Dewitt*, . . . knowing that I do not need to make a statement and that this statement may be used against me, make this statement on my own free will.  I have not been threatened or coerced into making this statement and no promises or representations have been made to me in exchange for making this statement.  I admit that on [*April 13, 2009*], I knowingly took from Home Depot [*one Ridgid drill*] without making payment and with the intention to deprive Home Depot of its right in the merchandise."  (Exhibit J to Def. 56.1 Stmt. (italics indicate handwritten portions).)

place a second drill in the box even though it should only hold one drill, and (4) proceed to purchase only a single drill and exit the Store in possession of the two drills without paying for the second drill. (Acevado Dep. at 10-12.) The police officers subsequently entered the office and spoke with the plaintiff, and plaintiff told them that he was not sure why he was getting arrested. (Pl. Dep. at 113.) Plaintiff was then placed in handcuffs, arrested, and escorted to the 60th Precinct by another police officer. (*Id.* at 103-104, 118, 141; Acevado Dep. at 60.) The probable cause for plaintiff's arrest was predicated on the statements the police officers received from the AP Specialists. (Acevado Dep. at 19-20, 66-67, 70-72; *see* Exhibit K to Def. 56.1 Stmt., Complaint Report.)

At his arraignment the next morning, plaintiff was charged with Petit Larceny under New York Penal Law § 155.25 and Criminal Possession of Stolen Property in the Fifth Degree under New York Penal Law § 165.40, both class A misdemeanors, for his alleged attempt to shoplift a Ridgid drill from Home Depot. (Pl. Dep. at 126-28; ECF No. 29-3, Certificate of Disposition). All criminal charges were subsequently dismissed on June 14, 2010. (*See* Certificate of Disposition.) Plaintiff sought and received medical treatment by a physician for injuries he sustained as a result of the AP Specialists' assault of him on April 13, 2009. (Pl. Dep. at 152-53.)

## B.    Issues of Fact Disputed by Home Depot

There are several aspects of plaintiff's deposition testimony that conflict with Simeon's deposition testimony, which are not material to deciding Home Depot's motion but provide background for Home Depot's view of the evidence.  First, Simeon testified that he and the other AP Specialists personally observed plaintiff attempt to steal one Ridgid drill from the Store.  Specifically, the AP Specialists observed plaintiff (1) open two sealed Ridgid drill boxes priced at $99.00, (2) remove the packaging from one of the drill boxes, (3) remove the drill from the other box and place it in the box from which he had removed the packaging so that it contained two drills, and (4) reseal the drill box containing two drills with tape located in the same aisle as the drills.  (Simeon Dep. at 54-66.) Subsequently, Moreno observed plaintiff proceed to a cash register with the drill box containing two drills, pay for only one drill, and pass all points of sales to exit the Store without paying for the second drill.  (*Id.* at 71-72, 75-76, 78-80; *see also* Exhibit P to Def. 56.1 Stmt. (a report filled out by Moreno the next day on April 14, 2012 ("Moreno Report") at 3.)

Second, Simeon testified that there was no physical contact between any of the AP Specialists and plaintiff at any point in time, including when plaintiff was stopped by the AP Specialists upon exiting the Store, during the walk to the office

in the back of the Store, and in the office.  (Simeon Dep. at 92-93, 108-09.)  Rather, Simeon testified that, when plaintiff was stopped at the Store exit, Moreno approached plaintiff from the front, showed plaintiff his photo ID badge with a Home Depot logo, identified himself by name and as a member of the Home Depot loss prevention team, and instructed plaintiff that he had to accompany the AP Specialists to the back office because he attempted to leave the Store without paying for a drill.  (*Id.* at 80-83; *see also* Moreno Report at 3.)  Simeon further testified that plaintiff initially stated that he paid for the drill, but when Moreno opened the drill box to reveal the two drills, plaintiff said he was sorry and voluntarily followed the AP Specialists to the office, saying sorry another five to seven times during the walk to the office.  (Simeon Dep. at 80, 84-85, 96.)  Additionally, although Simeon testified that he asked plaintiff on the walk to the office whether he had a weapon or anything that could explode, Simeon testified that the AP Specialists did not perform a pat-down of plaintiff and that the AP Specialists do not perform pat-downs.  (*Id.* at 95.)

Third, Simeon testified that, upon plaintiff's arrival in the back office, plaintiff requested that the AP Specialists not call the police.  (*Id.* at 94.)  Simeon further testified that plaintiff asked for a "courtesy" because his nephew is a police officer, and that, per policy, Simeon as the most senior AP

Specialist had to call the District Asset Protection Manager on duty, Marcus Torres, to inform him of the plaintiff's request. (*Id.* at 103-04.)

Fourth, Simeon testified that Moreno read the Voluntary Statement aloud to plaintiff, explained to plaintiff that he did not have to sign it, and that plaintiff read the Voluntary Statement with his glasses on. (*Id.* at 104-06.)

Finally, the arresting officer who interviewed plaintiff in the office testified during her deposition that plaintiff "said he made a mistake and he was sorry" (Acevado Dep. at 69; *see id.* at 14), and such statement was documented in her paperwork in connection with the arrest (*see, e.g.*, Exhibit N to Def. 56.1 Stmt., Shoplift/Criminal Possession of Stolen Property Fact Sheet ¶ 10). Plaintiff, however, denied telling the police officers he made a mistake. (Pl. Dep. at 114.)

## C. Qualifications and Training of Home Depot Asset Protection Specialists

Home Depot presented undisputed evidence regarding the qualifications and training of AP Specialists. In order to work as an AP Specialist in or around April 2009, an employee must have obtained a security guard license issued by New York State and also become certified by completing approximately three months of in-house Home Depot training. (Simeon Dep. at 9-13.) This training consists of physical, defensive, and surveillance

10

training, with the defensive training taught by the same instructors that train the police department. (*Id.* at 9-11.) Additionally, the AP Specialists are trained on how to detect fraud and the steps that must be followed in apprehending a suspect. (*Id.*) According to Simeon, AP Specialists do not forcefully detain any suspects, and they do not close the door to any room in which a suspect is detained in case there is a medical issue or the suspect wants to leave the store. (*Id.* at 99-100.) Finally, AP Specialists receive ongoing training after they have been certified when there are new classes available. (*Id.* at 11.)

**D.      Home Depot's Hiring and Retention of Moreno, Simeon, and Barbosa**

Home Depot presented largely uncontested evidence regarding the hiring and retention of Moreno, Simeon, and Barbosa through the sworn affidavit of their supervisor in April of 2009, Felix Momoh, who is currently employed as a District Asset Protection Manager for Home Depot. (Exhibit B to Def. Reply, Affidavit of Felix Momoh ("Momoh Aff.") ¶¶ 1-2, 5.) Mr. Momoh stated that a criminal background check was completed for Moreno, Simeon, and Barbosa prior to their hiring, and that the background check did not reveal any criminal convictions. (*Id.* ¶ 10.) Additionally, Moreno, Simeon, and Barbosa each indicated in their employment applications that they had not been convicted

of a crime.  (*Id.* ¶ 7.)  Finally, Home Depot checked the references in the employment applications of Moreno, Simeon, and Barbosa prior to hiring them.  (*Id.* ¶ 8.)

Mr. Momoh also reviewed Home Depot's personnel files for Moreno, Simeon, and Barbosa and stated that such files do not contain any record of any violent acts committed by them during the course of their employment at Home Depot.  (*Id.* ¶ 9.) Moreover, he confirmed that Moreno, Simeon, and Barbosa received Home Depot's policy against committing violent acts in the course of their employment.  (*Id.* ¶ 12.)

Although the parties did not submit Home Depot's personnel files for Simeon and Barbosa in connection with the instant motion, plaintiff submitted the personnel file of Moreno, which reveals a work-related incident on March 26, 2009 – approximately three weeks prior to the date of the incident at issue in this case.  (*See* ECF No. 31, Moreno Personnel File, Performance and/or Discipline Notice dated April 3, 2009 ("Discipline Notice").)  With respect to that March 26, 2009 incident, Moreno failed to validate with the cashier whether a suspect came into the Store with merchandise prior to approaching the suspect for a refund-related apprehension.  (*Id.*)  According to the Discipline Notice, Moreno "did stop, confront, and detain a customer without the necessary steps required to make approach" in contravention of Home Depot's loss prevention policies and the

guidelines outlined in the training that Moreno completed.  (*Id.*)
Because of this incident, Moreno was disciplined for a "Major
Work Rule Violation" and received "Final Counseling" for
"violation of Home Depot's Loss Prevention External/Internal
Policy."  (*Id.*)

## DISCUSSION

### II.  Summary Judgment Standard

"The court shall grant summary judgment if the movant
shows that there is no genuine dispute as to any material fact
and the movant is entitled to judgment as a matter of law."  Fed.
R. Civ. P. 56(a).  "[T]he mere existence of *some* alleged factual
dispute between the parties will not defeat an otherwise properly
supported motion for summary judgment; the requirement is that
there be no *genuine* issue of *material* fact."  *Anderson v. Liberty
Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  "A fact is 'material'
for these purposes when it 'might affect the outcome of the suit
under the governing law.'"  *Jeffreys v. City of New York*, 426
F.3d 549, 553 (2d Cir. 2005) (quoting *Anderson*, 477 U.S. at 248).
"A dispute regarding a material fact is genuine if the evidence
is such that a reasonable jury could return a verdict for the
nonmoving party."  *Redd v. Wright*, 597 F.3d 532, 536 (2d Cir.
2010) (internal quotation marks omitted).  No genuine issue of
material fact exists "unless there is sufficient evidence
favoring the nonmoving party for a jury to return a verdict for

that party.  If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted).

The moving party carries the burden of demonstrating the absence of a genuine issue of material fact. *FDIC*, 607 F.3d at 292 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).  Furthermore, the court must construe the facts in the light most favorable to the nonmoving party and all reasonable inferences and ambiguities must be resolved against the moving party. *Id.*  Nevertheless, "[t]o defeat summary judgment, . . . nonmoving parties must do more than simply show that there is some metaphysical doubt as to the material facts, and they may not rely on conclusory allegations or unsubstantiated speculation." *Jeffreys*, 426 F.3d at 554 (citations omitted) (internal quotation marks omitted).  Rather, "a nonmoving party 'must offer some hard evidence showing that its version of the events is not wholly fanciful.'" *Id.* (citing *D'Amico v. City of New York*, 132 F.3d 145, 149 (2d Cir. 1998)).

**III. Analysis**

Although the complaint consists mostly of conclusory allegations and it is unclear what specific negligence-based causes of action plaintiff is asserting, Home Depot appears to move for summary judgment on negligent hiring, negligent supervision, negligent retention, and negligent training claims

14

as well as a *respondeat superior* claim seeking to hold Home Depot vicariously liable for the AP Specialists' alleged forceful detention of plaintiff. (*See* Def. Mem. at 2-4, 7; Def. Reply at 3.) Plaintiff, however, only appears to oppose summary judgment on the negligent supervision claim and the *respondeat superior* claim, specifically arguing that Home Depot is vicariously liable for Moreno's negligence in using disproportionate physical force to detain plaintiff. (*See* Pl. Opp'n at 1-2, 8-11.) The court will address each of these claims under New York law, which plaintiff agrees applies to this case. (*Id.* at 7-8.)[3]

### A. The Direct Negligence Claims

Under New York law, an employer can be held liable under theories of negligent hiring, negligent supervision, negligent retention, and negligent training. *Baez v. Jetblue Airways*, 745 F. Supp. 2d 214, 225 (E.D.N.Y. 2010). All such claims are based on the employer's direct negligence. *Bouche v. City of Mount Vernon*, No. 11 Civ. 5246, 2012 U.S. Dist. LEXIS 40246, at *29-30 (S.D.N.Y. Mar. 22, 2012); *Sheila C. v. Povich*, 781 N.Y.S.2d 342, 350 (N.Y. App. Div. 1st Dep't 2004).

To support a claim for negligent hiring, supervision, retention, or training, a plaintiff must show that "the employer

---

[3] The court agrees with Home Depot that plaintiff has not alleged claims for false imprisonment, duress, or public or private nuisance in the complaint. (*See* Def. Mem. at 11-12; Def. Reply at 9-14). Nor does it appear from plaintiff's opposition brief that he is attempting to assert such claims.

15

knew or should have known of the employee's propensity for the conduct which caused the injury." *Bouche*, 2012 U.S. Dist. LEXIS 40246, at *30 (internal quotation marks omitted); *see Ehrens v. Lutheran Church*, 385 F.3d 232, 235 (2d Cir. 2004)*; Tesoriero v. Syosset Cent. Sch. Dist.*, 382 F. Supp. 2d 387, 401 (E.D.N.Y. 2005)*; Shor v. Touch-N-Go Farms, Inc.*, 933 N.Y.S.2d 686, 688 (N.Y. App. Div. 2d Dep't 2011).[4] Where the plaintiff fails to make such a showing, summary judgment in favor of the defendant is appropriate. *See Ehrens*, 385 F.3d at 235 (affirming grant of summary judgment on negligent supervision and retention claims where plaintiff failed to present admissible evidence to counter defendant's assertion that it was unaware of an employee's propensity to engage in tortious conduct); *Biggs*, 2010 U.S. Dist. LEXIS 121332, at *34 ("Summary judgment is granted where there is no evidence that the employer negligently hired an employee."); *Tesoriero*, 382 F. Supp. 2d at 401 (same).

In his complaint, plaintiff claims that he was "assaulted" and "battered" by the AP Specialists employed by Home Depot and that he suffered "severe and serious personal injuries to mind and body" and was "subjected to great physical pain and mental anguish." (*See* Compl. ¶¶ 33-36, 42.) Because the court

---

[4] The other two elements of these claims, (1) "that the tortfeasor and the defendant were in an employee-employer relationship" and (2) "that the tort was committed on the employer's premises," are satisfied and not in dispute. *See Biggs v. City of New York*, No. 08 Civ. 8123, 2010 U.S. Dist. LEXIS 121332, at *34 (S.D.N.Y. Nov. 15, 2010).

finds, construing all the evidence in the light most favorable to the plaintiff, that he has failed to make a sufficient showing – let alone any showing - that Home Depot knew or should have known of the propensity of any of the AP Specialists to commit the alleged injurious conduct against a customer who could not be suspected of any wrongdoing, summary judgment is granted in favor of Home Depot on all the direct negligence claims. *See Kalfus v. New York & Presbyterian Hosp.*, 706 F. Supp. 2d 458, 474 (S.D.N.Y. 2010) (granting summary judgment on negligent hiring, training, discipline, and retention claims "because Plaintiff has not provided any evidence to indicate that any of the Defendants had a history of or propensity toward violence, or that the [defendant] provided negligent training."). The court will specifically discuss each of the direct negligence claims in turn.

### 1. Negligent Hiring

With respect to the negligent hiring claim, plaintiff has failed to adduce evidence of any kind that Home Depot knew of the AP Specialists' allegedly injurious propensities at the time of their hiring. *Tesoriero*, 382 F. Supp. 2d at 401. Indeed, although an employer is not required to institute specific procedures for hiring employees or to inquire into a prospective employee's past convictions without knowledge of facts warranting an investigation of the prospective employee, *Estevez-Yalcin v.*

*Children's Vill.*, 331 F. Supp. 2d 170, 174-75 (S.D.N.Y. 2004),
Home Depot completed criminal background checks for Moreno,
Simeon, and Barbosa, asked them whether they had been convicted
of a crime, and checked their references prior to hiring them,
none of which revealed negative information. (Momoh Aff. ¶¶ 7-8,
10.)

Accordingly, because a reasonable jury could not return
a verdict in favor of the plaintiff on his negligent hiring
claim, summary judgment is granted in favor of Home Depot. *See
Estevez-Yalcin*, 331 F. Supp. 2d at 174-75 (granting summary
judgment where "[n]o reasonable jury could find that, at the time
[defendant] hired [the tortious employee], [defendant] knew or
should have known that [the employee] had a propensity for the
injurious conduct alleged in this case or that a background check
would have revealed such a propensity."); *Honohan v. Martin's
Food of S. Burlington, Inc.*, 679 N.Y.S.2d 478, 479-80 (N.Y. App.
Div. 3d Dep't 1998) (granting summary judgment on negligent
hiring, training, and supervision claims under analogous facts
where defendant grocery store checked the tortious employee's
references prior to his hiring and "plaintiffs failed to counter
defendants' showing with any evidence of [employee's] propensity
to commit the alleged acts . . ., instead relying on conclusory
statements and rash speculation.").

## 2. Negligent Supervision

In support of his negligent supervision claim, the only evidence that plaintiff cites is Moreno's previous failure, in a separate incident, to follow all steps required by Home Depot's policies prior to approaching a suspect in the Store, specifically his failure to validate with the cashier whether a suspect came into the Store with merchandise. (Pl. Opp'n at 9-11.) As discussed above, the central issue is whether plaintiff can establish that the defendant employer knew of the employee's propensity to engage in *the injurious conduct in question*. Contrary to plaintiff's belief, a reasonable jury could not infer that Home Depot knew or should have known of Moreno's alleged propensity to commit violent or excessively forceful acts causing "severe and serious personal injuries" against a customer – and particularly a customer like the plaintiff that allegedly committed no wrongdoing - from the fact that Moreno - on a single previous occasion - failed to verify a fact with the cashier prior to approaching a suspect pursuant to Home Depot policies.

Plaintiff's argument that Moreno's prior failure to follow Home Depot policies would put Home Depot on notice of Moreno's alleged propensity to engage in physically injurious or violent conduct is unavailing. (*See* Pl. Opp'n at 10-11.) Moreno's prior work-related incident – which did not involve a physical altercation with a customer – is insufficient to

demonstrate negligent supervision or retention on the part of Home Depot because it is not foreseeable that customers would be physically injured by a failure to consult with the cashier prior to approaching a suspect. *See Higgins v. Metro-North R.R.*, 318 F.3d 422, 427 (2d Cir. 2003) (affirming grant of summary judgment on negligent supervision claim because "only three incidents of unwanted contact . . . is not enough to put [employer] on notice that [employee] was prone to sexual harassment" and plaintiff "has not demonstrated that [employer] was aware of any particular threat posed by [employee]"); *Estevez-Yalcin*, 331 F. Supp. 2d at 174-76 (granting summary judgment on negligent supervision and retention claims after finding that employee's failure to follow instructions to engage in recreation with particular children "would not put a reasonable person on notice that [the employee] posed a danger of sexual assault or battery of children"); *Townsend v. Waldbaums, Inc.*, No. 06-5095, 2008 NY Slip Op 32467U, at *4-5 (N.Y. Sup. Ct. Sept. 2, 2008) (granting summary judgment on negligent supervision and training claims where store employee assaulted the plaintiff shoplifter because the employee had an "unblemished record," "was never before involved with this type of altercation with a shoplifter," and there were never any complaints against the employee for excessive force).

Just like *Higgins* and *Townsend*, plaintiff has not provided any evidence that Home Depot was aware of any use of

excessive force or other physical threat posed by the AP Specialists, any altercations of this type between the AP Specialists and customers, or of any complaints of assault or excessive force against the AP Specialists.  Accordingly, because no reasonable jury could return a verdict in favor of plaintiff on the negligent supervision claim, summary judgment is granted in favor of Home Depot on this claim as well.

### 3.    Negligent Retention

"To avoid summary judgment on the issue of negligent retention, . . . a plaintiff must offer evidence that the defendant negligently failed to terminate an employee - that is, that the defendant knew or should have known of the employee's propensity to commit acts meriting dismissal, yet failed to act accordingly."  *Tesoriero*, 382 F. Supp. 2d at 401.  This claim fails for the same reasons as the negligent hiring and supervision claims:  plaintiff's failure to present any evidence that Home Depot knew or should have known of the AP Specialists' alleged tortious propensities to commit the acts of force at issue here.  Plaintiff cannot and does not contend that Moreno's failure to follow Home Depot policies regarding approaching a customer on a single prior occasion was an act meriting dismissal.  Rather, Home Depot disciplined Moreno and required that he attend counseling.  Because plaintiff has not presented any evidence that Home Depot knew or should have known of the AP

Specialists' propensities to commit acts meriting dismissal, summary judgment is granted on the negligent retention claim.

### 4. Negligent Training

Finally, with respect to the negligent training claim, plaintiff "must demonstrate deficiencies in the training of employees that, if corrected, could have avoided the alleged harm." *Baez*, 745 F. Supp. 2d at 225 (internal quotation marks omitted). The record is devoid of any evidence regarding any deficiencies in the training of the AP Specialists. Indeed, Home Depot presented evidence that AP Specialists are required to undergo three months of training and obtain a security guard license issued by New York State prior to working as an AP Specialist, and that training continues during the course of an AP Specialist's employment. Accordingly, the court grants summary judgment on the negligent training claim. *See Hattar v. Carelli*, No. 09 CV 4642, 2012 U.S. Dist. LEXIS 12985, at *14 (S.D.N.Y. Jan. 11, 2012) (granting summary judgment where there is no evidence to support a negligent training claim).

Alternatively, assuming without deciding that plaintiff is correct that the AP Specialists who caused his injuries were acting within the scope of their employment by Home Depot (*see* Compl. ¶ 29; Pl. Opp'n at 12-13), the direct negligence claims must be dismissed for that reason alone. "It is well settled under New York law that [a] claim for negligent hiring or

supervision can only proceed against an employer for an employee acting outside the scope of her employment. Thus, [w]here an employee is acting within the scope of his or her employment, the employer is liable under the theory of *respondeat superior* and no claim may proceed against the employer for negligent hiring or retention." *Stokes v. City of New York*, No. 05-CV-0007, 2007 U.S. Dist. LEXIS 32787, at *53-54 (E.D.N.Y. May 3, 2007) (citation omitted) (internal quotation marks omitted); *see also Velez v. City of New York*, No. 04-CV-1775, 2012 U.S. Dist. LEXIS 51820, at *19-20 (E.D.N.Y. Mar. 31, 2012) ("[T]he great weight of authority teaches that a negligent training claim is viable under New York law *only* when the alleged wrongful conduct occurred outside the scope of employment."); *Biggs*, 2010 U.S. Dist. LEXIS 121332, at *35-36 ("[N]egligent hiring claim must also be dismissed because [tortious employees] were acting within the scope of their employment.").[5] Accordingly, because the direct negligent claims cannot succeed if, as plaintiff asserts, the AP Specialists were acting within the scope of their employment by

---

[5] *See Karoon v. New York City Transit Auth.*, 659 N.Y.S.2d 27, 29 (N.Y. App. Div. 1st Dep't 1997) ("We find that defendants are entitled to summary judgment dismissing plaintiff's negligent hiring, retention and training claims. Generally, where an employee is acting within the scope of his or her employment, thereby rendering the employer liable for any damages caused by the employee's negligence under a theory of respondeat superior, no claim may proceed against the employer for negligent hiring or retention. This is because if the employee was not negligent, there is no basis for imposing liability on the employer, and if the employee was negligent, the employer must pay the judgment regardless of the reasonableness of the hiring or retention or the adequacy of the training." (internal citations omitted)).

Home Depot, summary judgment is granted in favor of Home Depot on this ground as well.

B.    The *Respondeat Superior* Claim

Plaintiff also seeks to hold Home Depot liable under a theory of *respondeat superior* for Moreno's negligence in using disproportionate physical force to effectuate plaintiff's detention.  (Pl. Opp'n at 11-13.)  In support of its motion for summary judgment on this claim, Home Depot argues that (1) the complaint does not assert such a cause of action for "negligent assault" and (2) Moreno was not acting within the scope of his employment because the intentionally violent acts alleged here are not in furtherance of Home Depot's business interests.  (*See* Def. Reply at 8-9.)  Without reaching the second issue, the court finds that summary judgment should be granted in favor of Home Depot on the *respondeat superior* claim for Moreno's negligence.

1.    **Failure to State a Negligence Claim for Moreno's Use of Disproportionate Force**

The court agrees with Home Depot that plaintiff failed to allege a cause of action against Home Depot for Moreno's negligence.  Plaintiff's complaint alleged that plaintiff "was caused to be struck about his person and be precipitated to the ground by [Home Depot]'s employee within the scope of his employment, said incident occurring as a result of the negligence of [Home Depot]" (Compl. ¶ 29), and that "[s]olely as a result of

the defendants' negligence, carelessness and recklessness, [plaintiff] was caused to suffer severe and serious physical injuries to mind and body, and . . . was subjected to great physical pain and mental anguish" (*id.* ¶ 30; *see also id.* ¶¶ 33-40, 42, 49-52 (alleging that plaintiff was assaulted, battered, and apprehended and/or feared unfriendly contact).[6]

Such conclusory allegations are insufficient to support a cause of action against Home Depot for the negligent conduct of Moreno. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("While a complaint . . . does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." (citations omitted)); *Farash v. Cont'l Airlines, Inc.*, 337 F. App'x 7, 9 (2d Cir. 2009) (summary order) ("Although we recognize that the question of whether given conduct was 'reasonable' under the circumstances is often reserved for the trier of fact, the plaintiff is required to allege 'in what manner he was injured [and] how the [defendant] was negligent.'" (citation omitted)).

---

[6] The evidence presented by plaintiff in his sworn deposition testimony is inconsistent with the allegations in his complaint. The only evidence of physical contact between plaintiff and the AP Specialists is his testimony that (1) he was grabbed from behind by the neck and placed in a head lock (Pl. Dep. at 48-50, 64); (2) he was pulled with his right arm twisted behind his back to the back office of the Store (*id.* at 48, 64-65, 67-69); (3) he was patted down (*id.* at 70-71); and (4) he was pushed back into a chair when he tried to get up from a chair (*id.* at 78-80, 84-85).

In his complaint, plaintiff does not allege how Moreno was negligent and there is no reference at all to Moreno's use of disproportionate force, a theory that plaintiff raises for the first time in his opposition brief to the summary judgment motion. If anything, plaintiff's allegations sound in the intentional torts of assault or battery, for which Home Depot could be liable on a theory of *respondeat superior* if the AP Specialists were acting within the scope of their employment at the time of their alleged tortious acts. *See Ramos v. Jake Realty Co.*, 801 N.Y.S.2d 566, 567 (N.Y. App. Div. 1st Dep't 2005). All intentional tort claims, however, were discontinued with prejudice by plaintiff and are likely barred by the one-year statute of limitations in any event.[7] *See* N.Y. C.P.L.R. § 215(3). Accordingly, the court finds that plaintiff failed to assert a cause of action against Home Depot for Moreno's negligence in using allegedly disproportionate force against the plaintiff.

### 2. Plaintiff Cannot Assert a Negligence Claim for Intentional Conduct

Even if plaintiff did allege a *respondeat superior* claim against Home Depot for Moreno's negligent use of disproportionate force, he cannot recover for such conduct on a

---

[7] Plaintiff filed the complaint in state court on May 28, 2010, more than one year after the April 13, 2009 incident at the Store that is the subject of his claims.

theory of negligence under New York law based on the evidence presented here.  It is well-established under New York law that if the only inference that may be drawn from the evidence is that the defendant's contact with the plaintiff was intentional, the plaintiff may recover only for assault and/or battery and a negligence claim should not be submitted to the jury.  *See Kuar v. Mawn*, No 08-CV-4401, 2011 U.S. Dist. LEXIS 22209, at *50 (E.D.N.Y. Mar. 4, 2011); *Sylvester v. City of New York*, 385 F. Supp. 2d 431, 438 (S.D.N.Y. 2005); *Oliver v. Cuttler*, 968 F. Supp. 83, 92 (E.D.N.Y. 1997); *Mazzaferro v. Albany Motel Enters., Inc.*, 515 N.Y.S.2d 631, 632-33 (N.Y. App. Div. 3d Dep't 1987); *see also Jackson v. Harsch*, No. 96-7749, 1997 U.S. App. LEXIS 14977, at *3 (2d Cir. June 20, 1997).

Indeed, New York courts have consistently granted summary judgment in favor of defendants on negligence claims in cases with analogous facts on the ground that "once intentional offensive contact has been established, the actor is liable for assault and not negligence, even when the physical injuries may have been inflicted inadvertently."  *Mazzaferro*, 515 N.Y.S.2d at 632 (plaintiff "was struck from behind by a bus boy and another bouncer, as a result of which he fell and suffered the injuries complained of"); *see also Cagliostro v. Madison Sq. Garden, Inc.*, 901 N.Y.S.2d 222, 223 (N.Y. App. Div. 1st Dep't 2010) (defendant's employee "grabbed and pulled [plaintiff] out of the

seat, 'manhandling' him and causing him to fall and hurt his shoulder"); *Smiley v. North Gen. Hosp.*, 872 N.Y.S.2d 456, 457 (N.Y. App. Div. 1st Dep't 2009) (plaintiff struggled with security guards and "allegedly fell or was pushed to the floor, sustaining [a] knee injury"); *Smith v. County of Erie*, 743 N.Y.S.2d 649, 650 (N.Y. App. Div. 4th Dep't 2002) (defendant grabbed plaintiff and threw her to the ground with excessive force); *Wrase v. Bosco*, 706 N.Y.S.2d 434, 435 (N.Y. App. Div. 2d Dep't 2000) (plaintiff security guard alleged that he was injured during an altercation); *Trott v. Merit Dep't Store*, 484 N.Y.S.2d 827, 828-29 (N.Y. App. Div. 1st Dep't 1985) (dismissing claim for "negligent assault" where security guard observed plaintiff stealing property and then "chased the plaintiff, shouted warnings, fired once up in the air, shouted another warning and then discharged his shot gun to the ground, hitting plaintiff in the back"); *cf. Yasuna v. Big V Supermarkets, Inc.*, 725 N.Y.S.2d 656, 657-58 (N.Y. App. Div. 2d Dep't 2001) (finding that, where the plaintiff, a suspected shoplifter, alleged that defendant's employee "intentionally threw him to the ground," the "trial court erred in failing to charge the jury that it could not find both negligence on the part of the defendants and liability for

the intentional torts of assault and/or battery based upon the same acts.").[8]

According to plaintiff's deposition testimony, which the court assumes is true for purposes of deciding Home Depot's motion for summary judgment, plaintiff purchased a single drill from the Store without attempting to steal a second drill, and then, upon exiting the Store and without any explanation, (1) one of the AP Specialists "grabbed" plaintiff from behind by the neck and placed him in a head lock, (2) another AP Specialist "twisted" plaintiff's arm behind his back, and (3) with no resistance from plaintiff, the AP Specialists "pulled" him with his arm behind his back to the back office of the Store.  (Pl. Dep. at 48-50; *see also* Pl. Opp'n at 1-3 (stating that plaintiff was "wrongly accused of theft," "manhandle[d]," "forcefully detained," and "grabbed . . . along the neck and arm"); Compl. ¶¶ 29, 33-36, 51 (alleging that plaintiff was "struck,"

_____

[8]  In *Yasuna*, like here, the plaintiff was injured when he was detained by the defendant's employee for shoplifting merchandise.  725 N.Y.S.2d at 657.  The plaintiff in *Yasuna* testified that the employee "intentionally threw him to the ground and threatened him with a raised fist," *id.*, whereas the defendants presented evidence that the employee "merely stuck his arm out and that the plaintiff tripped while attempting to flee, knocking both men to the ground," *id.* at 657-58.  Because a jury could infer that the employee did not intend to make offensive contact with the plaintiff by sticking out his arm, the court permitted a negligence claim to be submitted to the jury, with an instruction that the jury could either find defendants liable for assault (crediting plaintiff's account) or negligence (crediting defendants' account and finding the other elements of negligence satisfied) or neither, but not both assault and negligence.  *See id.* at 658.  In contrast, here, based on the plaintiff's testimony describing being placed in a head lock, having his right arm twisted behind his back, and being pushed in a seat in an office, the AP Specialists' offensive contact with the plaintiff was intentional.  Plaintiff's account thus fails to give rise to a negligence claim.

"precipitated to the ground," "assaulted," and "battered").)
Additionally, plaintiff testified that one of the AP Specialists
"pushed" him back into a chair when he tried to get up from a
chair in the office.  (Pl. Dep. at 78-80, 84-85.)

      Like the New York cases discussed above, accepting
plaintiff's version of the facts as true, the only inference that
may be drawn is that the AP Specialists' offensive bodily contact
with the plaintiff – if it occurred at all - was intentional and
not negligent, and there is "no basis in the record to support a
finding that the [contact] was inadvertent, accidental or
anything but willful."  *Sanchez by Hernandez v. Wallkill Cent.
Sch. Dist.*, 633 N.Y.S.2d 871, 871 (N.Y. App. Div. 3d Dep't 1995);
*see Cagliostro*, 901 N.Y.S.2d at 223 (granting summary judgment on
negligence claim where plaintiff testified "that he was 'pushed,'
'grabbed,' 'pulled,' and 'manhandled'"); *Mazzaferro*, 515 N.Y.S.2d
at 632-33 (affirming dismissal of negligence claim where
plaintiff established at trial that "he was struck from behind by
a bus boy and another bouncer" and defendant denied any such
conduct because "[p]laintiff's proof admitted of no other
inference than that defendants' employees' offensive touching of
plaintiff, if it occurred at all, was intentional and not
inadvertent"); *Townsend*, 2008 NY Slip Op 32467U, at *4 (granting
summary judgment on negligence claim where plaintiff, a
shoplifter, testified that the defendant's employee punched him

and the employee denied any such conduct because, "accepting as true . . . plaintiff's version of events . . . , such offensive contact was an intentional assault and not negligence, as a negligent assault does not exist").[9]  Indeed, plaintiff himself alleged in the complaint that the AP Specialists "intended to make contact" with him (Compl. ¶ 49) and that his injuries were "caused as a result of the unintentional consequence of an *intentional* act on the part of the" AP Specialists (*id.* ¶ 43 (emphasis added)).

As discussed previously, whether the AP Specialists may not have intended to cause plaintiff's injuries does not change the character of their conduct from one of assault to one of negligence, so long as the offensive physical contact with plaintiff was intentional.  *See Cagliostro*, 901 N.Y.S.2d at 223 ("It is well settled that once intentional offensive contact has been established, the actor is liable for assault and not negligence . . . .  This is so even if the actor did not intend to cause injury." (citation omitted) (internal quotation marks omitted)); *Mazzaferro*, 515 N.Y.S.2d at 633 ("[T]he authorities

_____

[9]  In *Townsend*, because it was undisputed that the plaintiff and his companion were attempting to steal beer when he was stopped and detained for shoplifting by defendant's employees, the court reached the issue of whether, viewing the evidence in the light most favorable to the plaintiff, the employees' initial use of force to apprehend and detain the plaintiff was reasonable as a matter of law as a defense to certain intentional tort claims under New York General Business Law § 218.  2008 NY Slip Op 32467U, at *4.  Here, of course, plaintiff disputes that he was shoplifting, and the court need not reach this issue in deciding that summary judgment be granted in favor of Home Depot.

are clear that any lack of care in the course of committing an assault does not convert the action from intentional tort to negligence."); *Trott*, 484 N.Y.S.2d at 829 ("[I]n an action to recover damages for assault founded on bodily contact, the plaintiff is not required to show defendant intended physically to injure him, nor that he intended to cause specific injuries resulting from the contact.").

Moreover, the fact that plaintiff is now arguing negligence due to disproportionate force does not transform the cause of action into one for negligence where there is no evidence to support such a claim. *See Sylvester*, 385 F. Supp. 2d at 439 (granting summary judgment on negligence claim because "[w]hile the plaintiffs attempt to assert that [the detective] may have carelessly or negligently shot [plaintiff], there is no evidence for that theory"); *Smiley*, 872 N.Y.S.2d at 457 ("[P]laintiff's argument that the security personnel used excessive force does not transform this action into one for negligence."); *Goff v. Clarke*, No. 98-2101, 2002 NY Slip Op 50020U, at *6 (N.Y. Sup. Ct. Jan. 22, 2002) (finding that, because "defendant's acts cannot be characterized as both intentional and reckless or negligent," "any claim predicated upon defendant's unintentional use of excessive force is not properly denominated as a negligence claim but is rather subsumed in plaintiff's assault claim."); *see also Trott*, 484 N.Y.S.2d at

829 ("Form should not be exalted over substance and it is the reality and essence of the cause of action that is controlling.").

This court's decision in *Baker v. 221 N. 9 St. Corp.*, No. 08-CV-03486, 2010 U.S. Dist. LEXIS 99915 (E.D.N.Y. Sept. 23, 2010) provides a useful comparison. In *Baker,* the defendant moved for summary judgment on plaintiff's negligence claim on the ground that, because it was undisputed that he struck the plaintiff in the face with a glass object, plaintiff's only viable cause of action was a claim for assault and/or battery, which was previously dismissed as time-barred. *Id.* at *1-2. The court, however, denied defendant's motion because "there is a disputed issue of material fact as to whether defendant engaged in intentional offensive bodily contact with plaintiff by striking him with the glass, or whether the act was a reflexive response to the situation," which is an unintentional and potentially negligent act under New York law. *Id.* at *19-21, *25-26. Unlike *Baker*, where the defendant did not dispute that he physically struck plaintiff with a glass and the dispute involved whether he *intentionally* struck the plaintiff, here the parties dispute whether or not the AP Specialists made any offensive bodily contact at all with the plaintiff. Construing the evidence in the light most favorable to the plaintiff, a reasonable jury could only infer that the AP Specialists'

offensive bodily contact with the plaintiff was intentional – or, if Home Depot's version of the facts is to be credited, that there was no contact at all between plaintiff and the AP Specialists.  A reasonable jury thus could not infer – under any reading of the evidence and despite the disputed issues of fact - that the AP Specialists' conduct was negligent.

    As in *Baker*, plaintiff is likely attempting to bring his *respondeat superior* claim against Home Depot in negligence rather than assault and/or battery because any intentional tort claims were discontinued with prejudice and are likely barred by the statute of limitations.  *See supra* at p. 26 & n.7.  This attempt to circumvent the statute of limitations bar to the intentional tort claims by bringing his claim in negligence is unavailing.  *See Wahlstrom v. Metro-North Commuter R.R.*, 89 F. Supp. 2d 506, 532 (S.D.N.Y. 2000) ("This Court is mindful that 'New York Courts have rejected uniformly such attempts to transmogrify intentional torts into 'negligence.'"); *Robinson v. Franklin Gen. Hosp.*, 160 Misc. 2d 893, 894 (N.Y. Sup. Ct. 1994) ("[T]he one-year limitation on intentional injury cannot be circumvented by characterizing an intentional injury as some other tort such as negligence.").  Accordingly, construing the evidence in the light most favorable to the plaintiff, because a reasonable jury could only infer from the plaintiff's account of the evidence that the AP Specialists' offensive bodily contact

with the plaintiff – if it occurred at all - was intentional,
plaintiff may only recover for assault and/or battery.
Consequently, summary judgment is thus granted in favor of Home
Depot on the *respondeat superior* claim for Moreno's negligence.

### CONCLUSION

For the foregoing reasons, Home Depot's motion for
summary judgment is granted on plaintiff's negligence claims,
which are the only remaining claims in this action.  The
Clerk of the Court is therefore respectfully requested to enter
judgment in favor of Home Depot and against plaintiff and to
close this case.

**SO ORDERED.**

Dated:     September 12, 2012
           Brooklyn, New York

                              _____/s/_____

                              KIYO A. MATSUMOTO
                              United States District Judge
                              Eastern District of New York